Larry Gene Heath filed a petition for writ of error coram nobis seeking to set aside his conviction in the Russell County Circuit Court. A full evidentiary hearing was conducted on the appellant's petition, and the appellant was represented by counsel of his choice at this hearing. Following the hearing, the trial judge denied the appellant's petition for error coram nobis and made specific findings. The appellant now appeals the denial of his petition.
On August 31, 1981, Rebecca McQuire Heath, the appellant's wife, was kidnapped in Russell County, Alabama, and killed by a gunshot wound to her head. Her body was found in the backseat of her automobile off a county road in Troup County, Georgia. Rebecca Heath was nine months pregnant at the time of her death. This appellant paid Rebecca Heath's killers $2,000 to kill his wife. The appellant was indicted for the capital offense of murder during a kidnapping (in violation of §13A-5-40(a)(1), Code of Alabama 1975) by the Grand Jury of Russell County in May of 1982. The trial jury found the appellant guilty of the offense charged in the indictment and recommended a "sentence of death." The trial judge accepted the jury's recommendation and sentenced the appellant to death.
On original direct appeal, this court affirmed the appellant's conviction in Heath v. State, 455 So.2d 898
(Ala.Cr.App. 1983). This court's decision was affirmed by the Alabama Supreme Court in Ex parte Heath, 455 So.2d 905 (Ala. 1984). The United States Supreme Court granted certiorari in the appellant's case and affirmed his conviction in Heath v.Alabama, 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985).
Following the hearing on the appellant's petition for writ of error coram nobis, the trial judge made specific written findings concerning each of the allegations made in the appellant's petition. The trial judge's findings, which are included in his order denying the petition, are thorough and complete and, thus, are adopted by this court as "Appendix A" to this opinion. The same is attached hereto and made a part hereof.
This court, as required by Rule 45A, A.R.A.P., has carefully reviewed the record in this cause and has considered each of the allegations of the petition for writ of error coram nobis and those specifically raised on appeal.
 I
The appellant filed a plea to the jurisdiction at his trial and attacked Alabama's jurisdiction to prosecute him. This plea was denied by the trial judge at the appellant's trial and the appellant failed to raise this issue on original direct appeal. The only issue raised by the appellant concerned "Double Jeopardy."
Thus, although the appellant raised this issue at trial, hisfailure to raise it on direct appeal will now bar our review of this issue. Summers v. State, 366 So.2d 336 (Ala.Cr.App. 1978), writ denied, 366 So.2d 346 (Ala. 1979); Dobard v. State,455 So.2d 281 (Ala.Cr.App. 1984); Dunkins v. State,489 So.2d 603 (Ala.Cr.App. 1985).
Nevertheless, we hold that Alabama did in fact have jurisdiction to prosecute this appellant for the capital offense of murder/kidnapping. Murder during the course of a kidnapping is a single offense consisting of two elements.Boyd v. State, [7 Div. 861, January 26, 1988] (Ala.Cr.App. 1988). When an offense is commenced in Alabama and consummated outside of Alabama, this State has jurisdiction to prosecute the offender. See Ala. Code, § 15-2-3 (1975). Thus, although this *Page 144 
offense of murder/kidnapping may have been consummated in Georgia, it commenced in Alabama. Therefore, Alabama properly had jurisdiction to prosecute the appellant for this offense.Baldwin v. State, 456 So.2d 117 (Ala.Cr.App. 1983), affirmed,456 So.2d 129 (Ala. 1984), affirmed, 472 U.S. 372,105 S.Ct. 2727, 86 L.Ed.2d 300 (1985).
 II
The appellant contends his prosecution in Alabama was the result of prosecutorial vindictiveness because the appellant refused to testify at his accomplices' trial in Georgia after the appellant had pleaded guilty to murder in that State. The appellant failed to raise this issue at trial or on appeal even though the facts and events upon which he bases his allegation were known to him prior to his trial. Thus, this issue is not before this court for review. Ex parte Clisby, 501 So.2d 483
(Ala. 1986); Ex parte Ellison, 410 So.2d 130 (Ala. 1982).
Furthermore, our review of the trial record and the supplemental record reveals that all of these records, when carefully considered, do not substantiate or support the appellant's assertion that his prosecution was due to prosecutorial vindictiveness.
 III
The appellant contends his trial counsel was ineffective because he failed to raise the issues which we have discussed in Issues I and II.
We have carefully considered the appellant's claim of ineffective assistance of counsel and have reviewed the record in this regard. The appellant's trial counsel testified that he did not raise the jurisdiction and the prosecutorial vindictiveness issues because he believed they did not have any merit. We must agree. See Issues I and II herein.
This appellant has failed to demonstrate that his trial counsel's performance was defective or that he was prejudiced by his counsel's performance at trial. Thus, he has failed to make out a case under Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See also Harrell v.State, 526 So.2d 646 (Ala.Cr.App.), cert. denied (Ala. 1988).
We find no error in this appeal. The trial court's findings are supported by the record. Thus, the trial judge's denial of the appellant's petition for writ of error coram nobis is due to be, and the same is hereby, affirmed.
AFFIRMED.
All the Judges concur.
 APPENDIX A In the Circuit Court of Russell County, Alabama
Larry Gene Heath, Petitioner,
 v.
State of Alabama, Defendant.
No. CC 82-392.
 ORDER
Petitioner has filed a petition for writ of error coram nobis. He has been represented by counsel of his choice in these proceedings. A hearing was held on the petition at which the Court heard testimony and exhibits admitted into evidence. The Court has considered carefully the evidence. The record should reflect that the undersigned was the trial judge in the original proceedings. The following findings are made:
 Claim One: Lack of Jurisdiction
At trial, petitioner filed a plea to jurisdiction attacking Alabama's jurisdiction to prosecute him. At the close of the State's case, this plea was denied. Petitioner did not raise the denial of the plea to jurisdiction as an issue on direct appeal; rather he raised the issue of his pleas of autrefois convict and former jeopardy.
Coram nobis does not lie to review an issue raised at trial but abandoned on direct appeal. Summers v. State,366 So.2d 336, 340 (Ala.Cr.App. 1978). The Court also notes as an alternative that the petitioner assumes that the criminal acts occurred in *Page 145 
the State of Georgia. There is nothing in the record to conclusively prove that the murder was perpetrated in Georgia. It is clear that the kidnapping of Rebecca Heath took place in Alabama. Petitioner seeks the Court to find that the murder of his wife took place in Georgia since her body was found there. Alabama has jurisdiction since the criminal act started with the kidnapping in Russell County, Alabama. See Code of Alabama
1975, § 15-2-3. Petitioner's failure to raise this claim on direct appeal after raising it at trial bars coram nobis review.
 Claim Two: Vindictive Prosecution
Petitioner did not raise this claim at trial. Petitioner pled guilty to murder in Georgia, and refused to testify at his accomplices' trial, before he was charged in Alabama. The events upon which his present claim of vindictive prosecution is based were known to him before his Alabama trial. Petitioner could have raised this claim at trial and then on direct appeal but did not.
Coram nobis does not lie to review issues that could have been raised at trial and then on direct appeal but were not.E.g., Ex parte Ellison, 410 So.2d 130, 132 (Ala. 1982). Petitioner's failure to raise this claim at trial and then on direct appeal bars coram nobis review.
 Claim Three: Confession
At trial, petitioner filed a motion to suppress his statements to the authorities. (R. 765-766) After a hearing on the admissibility of petitioner's statements, the motion to suppress was denied. (R. 521) Petitioner did not raise the denial of this motion to suppress as an issue on direct appeal.Heath v. State, supra, 455 So.2d at 899.
Coram nobis does not lie to review issues, such as this one, which were raised at trial but abandoned on direct appeal.Dobard v. State, 455 So.2d 281 (Ala.Cr.App. 1984). Petitioner's failure to pursue this claim on direct appeal bars coram nobis review.
 Claim Four: Ineffective Assistance of Counsel
An evidentiary hearing was held on this claim. At that hearing, petitioner amended his petition to dismiss those portions of this claim which alleged that trial counsel failed to present an adequate sentencing defense, paragraphs 28-38 of the petition, and that trial counsel failed to request independent psychiatric assistance, paragraphs 39-41 of the petition. Petitioner presented one witness from a Georgia television station, the deposition of District Attorney Davis, and newspaper clippings, petition's exhibits A, B, D and D. Petitioner and respondent stipulated to Russell County, Alabama, circulation figures for two Georgia newspapers. Respondent called Larry Roney and Michael Raiford.
Roney and Raiford were appointed to represent petitioner. Roney was lead counsel and also represented petitioner on direct appeal. Raiford assisted at trial but did not represent petitioner on direct appeal. At the time of petitioner's trial both Roney's and Raifords practice included a substantial amount of criminal defense work. In addition, Roney had been involved in other capital cases before petitioner's. Petitioner's trial counsel were experienced, competent criminal defense lawyers.
 A. Legal Standard
The legal standard to be used in deciding ineffective assistance of counsel claims was announced in Strickland v.Washington, 466 U.S. 668, 104 S.Ct. 2052 [80 L.Ed.2d 674] (1984). The Court stated that the fundamental question on any claim of ineffective assistance was "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2064. The Court held that there were two components to an ineffective assistance of counsel claim:
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that *Page 146 
counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction of death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
466 U.S. at 687, 104 S.Ct. at 2064.
As to the first component of an ineffective assistance of counsel claim, the Court held that the standard for measuring attorney performance is an objective one, "reasonableness under prevailing professional norms." 466 U.S. at 688,104 S.Ct. at 2064-2065. Because the purpose of the Sixth Amendment is to insure that a defendant received a fair trial, the Court said "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."466 U.S. at 688, 104 S.Ct. at 2065.
After a petitioner has identified the specific act or omission which he alleged was not the result of reasonable professional judgment, the Court must determine whether it was "outside the wide range of professionally competent assistance." 466 U.S. at 690, 104 S.Ct. at 2066. In making this determination, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690, 104 S.Ct. at 2066.
Even if a defendant can show that his attorney's performance was deficient, his conviction or sentence will not be set aside absent his affirmatively proving prejudice. 466 U.S. at 693,104 S.Ct. at 2067. A defendant must prove prejudice because any given error is as likely to have been harmless as it is to have been harmful. 466 U.S. at 693, 104 S.Ct. 2067. A defendant must do more than "show that the errors had some conceivable effect on the outcome of the proceeding." 466 U.S. at 693,104 S.Ct. at 2068. In order to prove that he was prejudiced by his attorney's deficient performance:
 The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability sufficient to undermine confidence in the outcome.
466 U.S. at 694, 104 S.Ct. at 2068.
Petitioner has the burden of proving both that his attorney's performance was deficient and that he was prejudiced.
As to his claims that trial counsel was ineffective for failing to raise and pursue issues both at trial and on direct appeal, petitioner was not entitled to counsel who raised every constitutional claim available at trial and on appeal. "The basis for that decision was counsel's perception that the claim had little chance of success." E.g., Smith v. Murray
[477 U.S. 527], 106 S.Ct. 2661, 2666 [91 L.Ed.2d 434] (1986); Engle v.Isaac, 456 U.S. 107, 134 [102 S.Ct. 1558, 1575, 71 L.Ed.2d 783] (1982).
Because his claims of ineffective assistance amount to no more than second guessing appellate counsel's performance after an unsuccessful appeal, petitioner has failed to establish that appellate counsel rendered ineffective assistance.
 B. Failure to Appeal Denial of Plea to Jurisdiction
Petitioner's appellate counsel did not raise the denial of his plea to jurisdiction (R. 587-590) as an issue on his direct appeal. At the coram nobis proceeding, appellate counsel testified that he did not raise this claim, because, under the evidence, it was clear that the crime began in Alabama and ended in Georgia thus satisfying the Alabama statute. He testified that his research did not lead him to believe that this issue would be successful on appeal.
On direct appeal, appellate counsel focused on petitioner's double jeopardy claim, that he had been tried and convicted twice for the same offense. Heath v. State, 455 So.2d 898, 899
(Ala.Cr.App. 1983), aff'd, 455 So.2d 905 (Ala. 1984). He thought this was the single important issue in the case. His strategic decision to focus on this single issue was reasonable and did not render his performance deficient on appeal. Thus, petitioner failed to prove that his appellate *Page 147 
counsel's performance was deficient in this regard and he is not entitled to relief on this claim.
Even if petitioner could prove that his attorneys' performance was deficient, he could not establish that he was prejudiced by any deficiency because the jurisdiction asserted in his case by the State of Alabama did not violate due process.
Petitioner claims that the crime for which he was convicted occurred in Georgia. This is inaccurate. There is nothing in the record to prove this. Petitioner was convicted of a kidnapping/murder, which is defined under Code of Alabama 1975, § 13A-5-40(1)(a), [§ 13A-5-40(a)(1)] as follows:
 (1) Murder by the defendant during a kidnapping in the first degree or an attempt thereof committed by the defendant.
Under Alabama law capital offenses such as kidnapping/murder and robbery/murder consist of two elements but are not two different offenses. Ex parte Baldwin, 372 So.2d 32 (Ala. 1979). Criminal liability in Alabama for a single offense commenced in Alabama and consummated outside of the State is provided for inCode of Alabama 1975, § 15-2-3. This statute does not violate the Due Process Clause.
 C. Failure to Raise Vindictive Prosecution as a Ground for Dismissing Indictment
Petitioner's trial counsel did not seek to have the indictment dismissed on the ground of vindictive prosecution. At the coram nobis hearing, lead trial counsel, Larry Roney, testified that he did not raise this claim because his investigation did not lead him to believe that petitioner was prosecuted in Alabama because he had refused to testify against his accomplices in Georgia. Roney's investigation had included a review of the district attorney's file.
District Attorney Davis' deposition, petitioner's exhibit D, shows that trial counsel's decision not to raise this claim was reasonable. Davis testified that he was the assistant district attorney assigned to the investigation into the murder of Rebecca Heath. Davis was in contact with the district attorney in Georgia who prosecuted those involved in the murder of Rebecca Heath. He attended the trial of two of petitioner's co-defendants, Owens and Lumpkin, in Georgia. He primary interest in attending this trial was to hear the case against Owens and Lumpkin.
The decision to prosecute petitioner in Alabama was made by then District Attorney Benton. Davis had always understood that petitioner would be prosecuted in Alabama. No action was taken against petitioner until after the Georgia prosecution simply because there was no way to obtain custody until after the Georgia cases concluded. To Davis' knowledge, petitioner's refusal to testify against Owens and Lumpkin had no effect on Alabama's decision to prosecute. No one from Georgia requested that Alabama prosecute petitioner because he had refused to testify against Owens and Lumpkin in Georgia. Alabama had intended to prosecute petitioner since he was arrested and the only question had been on what charge.
None of the evidence at trial suggested that petitioner was prosecuted in Alabama at the insistence or suggestion of law enforcement agencies in Georgia. The evidence presented at the coram nobis hearing establishes that petitioner was prosecuted in Alabama because he had broken the laws of the State of Alabama. Trial counsel's decision to focus on what he considered to be more important claims did not render his performance deficient.
District attorney Davis' testimony clearly shows that Alabama had intended to try petitioner from the time he was arrested, that Alabama tried him because he had committed an offense in Alabama, and that the Alabama prosecution was not the result of a desire to punish petitioner for the assertion of a constitutional right in Georgia. Thus, there is no merit to any claim of vindictive prosecution and petitioner has failed to prove that he was prejudiced by the decision not to raise this claim at trial.
 D. Failure to See Dismissal of the Indictment on the Ground that Petitioner had Confessed in return for Immunity from Prosecution
Petitioner's trial counsel did not seek to have the indictment against petitioner dismissed *Page 148 
on the ground that he had been given immunity from prosecution in return for his confession. The evidence at trial does not support the contention that petitioner received immunity. Petitioner did not present any evidence at the coram nobis hearing to support this contention.
At the coram nobis hearing, petitioner's lead trial counsel testified that petitioner never told him that part of petitioner's deal in Georgia had been immunity from prosecution. Trial counsel never discovered any evidence of any promise of immunity. Trial counsels' testimony on this point stands uncontradicted and is credible. Additionally, petitioner did not assert that he had been promised immunity when he testified on this plea of former jeopardy and autrefois convict and at the suppression hearing.
Petitioner has failed to show any factual basis for dismissing his indictment as violating a promise of immunity. He has failed to meet his burden of proving that trial counsels' performance was deficient and that he was prejudiced by trial counsels' failure to raise this claim.
 E. Failure to Present Evidence in Support of Motion for Change of Venue and Failure to Appeal from Denial of that Motion
At the coram nobis hearing, petitioner called Tim Esbar, a radio reporter, and introduced newspaper clippings from local newspapers along with the stipulation as to their circulation in Russell County, Alabama Respondent called trial counsel.
Esbar testified that his station had seven or eight brief newscasts a day. He said that petitioner's trial received more coverage than a "typical" murder trial. He did not recall the contents of any of the newscasts. He stated that there were other stories covered in the newscasts which mentioned petitioner's trial.
The newspaper stories submitted by petitioner are factual reports on events during the investigation and prosecution of petitioner and the other participants in the murder of his wife. The stories are factual and there are no attempts to arouse or inflame the passions of the citizens of Russell County. A number of the stories submitted by petitioner concern events after the guilt and punishment stages of his trial.
Trial counsel did not present any evidence of pre-trial publicity at trial. At the coram nobis hearing, lead trial counsel testified that, given the extensive vior dire and the answers given by the prospective jurors who were not excused, he saw no change for successfully challenging the denial of this motion on direct appeal. He thought that, given the facts, petitioner's trial would have produced the same result wherever it was tried and that petitioner's double jeopardy claim was his best defense. Petitioner's other trial counsel, Michael Raiford, testified that he examined the newspaper stories about petitioner's case and attempted to view video tapes of the television coverage. He did not recall why the newspaper clippings were not submitted.
During the voir dire examination of the jury venire, almost all of the prospective jurors had some knowledge of news stories about the murder of Rebecca Heath. However, every prospective juror who could not disregard what he had heard and could not decide the case on the evidence was excused for cause. Further, given petitioner's reliance on double jeopardy as a defense, it was necessary for the jurors to be aware of petitioner's conviction in Georgia.
In light of petitioner's defense at trial, petitioner has failed to show that trial counsels' performance was deficient for failing to present newspaper, television and radio reports in support of his motion for change of venue. Given petitioner's reliance on double jeopardy as a defense, the jury that tried his case, in whatever venue, would have learned of his prior conviction. Given the prospective jurors' responses to questions on voir dire, petitioner has failed to show that appellate counsel's decision not to raise the denial of the change of venue motion as an issue on appeal rendered appellate counsel's performance deficient. Again, it appears that appellate counsel merely made a strategic decision to focus on a better issue. *Page 149 
Even if petitioner had succeeded in his attempt to show that trial counsels' performance was deficient for failing to support his change of venue motion, he has failed to establish that he was prejudiced by this failure. The articles presented by petitioner are factual and do not go beyond simply reporting events. They are not unduly prejudicial and do not reveal evidence not presented against petitioner at trial. There is no reasonable probability that, but for trial counsels' failure to present these clippings and newscasts in support of the change of venue motion, the outcome of his trial would have been different. In fact, there is no reasonable probability that the change of venue motion would have been granted.
Petitioner has failed to prove that he was prejudiced by the absence of these news articles in support of the change of venue motion because the articles presented to not warrant a change of venue. In order to obtain a change of venue, a defendant must prove either actual juror prejudice against his or pervasive community hostility resulting from prejudicial publicity. E.g., Ex Parte Grayson, 479 So.2d 76, 80 (Ala. 1985). Petitioner's evidence does not satisfy either part of this standard.
Widespread publicity about a case does not in and of itself warrant granting change of venue. Waldrop v. State,459 So.2d 953, 955 (Ala.Cr.App. 1983), aff'd, 459 So.2d 959 (Ala. 1984). Newspaper articles which merely show the existence of publicity are not sufficient to warrant change of venue. Lokos v. State,434 So.2d 818, 827-828 (Ala.Cr.App. 1982), aff'd, 434 So.2d 831
(Ala. 1983). Objective, factual news stories, which are not sensational or inflammatory and do not editorialize or seek to create an atmosphere of prejudice, are not sufficient grounds for a change of venue. Primm v. State, [473 So.2d 1149
(Ala.Cr.App. 1985)]; Aycock v. State, 50 Ala. App. 130, 133,277 So.2d 404, cert. denied, 291 Ala. 49, 277 So.2d 412 (1973). The newspaper articles submitted by petitioner are objective reports of the events in the investigation and prosecution of his crime. They are not "accusational or denunciatory" and do not editorialize against petitioner. They do not show the pervasive atmosphere of prejudice necessary to warrant a change of venue.
Petitioner has also failed to prove that any juror was prejudiced by the pre-trial publicity in his case and, thue, has failed to prove the second ground for granting a change of venue. Each prospective juror, who survived a challenge for cause, swore that he was able to decide petitioner's case on the evidence despite any prior knowledge of the case. The fact that the prospective jurors were not wholly ignorant of the facts and issues in petitioner's case did not establish the actual prejudice necessary for a change of venue. Ex parteGrayson, supra, 479 So.2d at 80; Lokos v. State, supra.
The proper method to use in attempting to establish actual juror prejudice based on pre-trial publicity is jury voir dire.Ex parte Grayson, supra, 479 So.2d at 80. In petitioner's case, the venire was questioned individually and each juror who survived challenge for cause was not prejudiced against petitioner and was able to decide the case only on the evidence at trial. Thus, the voir dire examination established that there was no need to grant a change of venue based on actual juror prejudice. See, Primm v. State, supra, 473 So.2d at 1155. Petitioner has presented no evidence to show that the jurors who heard his case did not follow their oaths to decide his case on the evidence.
Petitioner failed to prove that he was entitled to a change of venue because of prejudicial pre-trial publicity. He has, therefore, also failed to establish a reasonable probability that, but for the failure to present evidence in support of the venue motion, the outcome of his trial would have been different. Petitioner has not shown that his trial counsel was ineffective for failing to present evidence in support of his venue motion.
Petitioner also failed to prove that he was prejudiced by appellate counsel's decision not to raise the denial of the venue motion since his evidence does not establish that he was entitled to a change of venue. Additionally, a trial court's decision to deny *Page 150 
a change of venue motion will not be reversed absent an abuse of discretion. E.g., Ex parte Magwood, 426 So.2d 929, 931 (Ala. 1983). Given the objective nature of the pre-trial publicity and the prospective jurors' ability to decide the case solely on the evidence, petitioner has not established a reasonable probability that, but for counsel's failure to raise this issue, the outcome of his direct appeal would have been different.
 F. Failure to Raise Denial of Challenges for Cause on Appeal
On direct appeal, appellate counsel did not raise the trial court's denieal of certain of petitioner's challenges for cause. As noted above, appellate counsel decided to focus on the double jeopardy issue on appeal. This decision was reached after an extensive individual voir dire examination of the jury venire during which ten potential jurors, who were prejudiced against petitioner, were excused for cause. Petitioner's challenges to the remaining jurors were denied after each stated that he could decide the case solely on the basis of the evidence. Appellate counsel's decision to focus on the double jeopardy claim and not to raise the denial of these challenges was a reasonable strategic decision which is not to be second guessed now. Strickland v. Washington, supra,466 U.S. at 689-690 [104 S.Ct. at 2065-2066].
Additionally, petitioner has not established that he was prejudiced by the decision not to raise this claim on direct appeal since it was not error to deny his challenges for cause. Petitioner had the burden of demonstrating that the prospective jurors whom he challenged for cause could not be impartial.Lowe v. State, 384 So.2d 1164, 1170 (Ala.Cr.App.) cert. denied,384 So.2d 1171 (Ala. 1980). Petitioner has not shown that the denial of his challenges for cause was error and has not established a reasonable probability that, but for the decision not to raise this claim, the outcome of his direct appeal would have been different.
 G. Failure to Raise Bullington/Rumsey Claim
Petitioner did not raise this issue at trial or on direct appeal. At the coram nobis hearing, lead trial counsel testified that he thought this claim, that petitioner could not be sentenced to death in Alabama because he had been sentenced to life in Georgia, was raised as part of his double jeopardy claim. His apparent confusion is understandable since this claim is based on the incorrect assertion that the Georgia and Alabama convictions and resultant sentences were for the same offense. This claim is, thus, based on the same proposition which petitioner asserted at trial and on appeal and which was rejected by the United States Supreme Court, that he was being prosecuted twice for the same offense. Heath v. Alabama
[474 U.S. 82], 106 S.Ct. 433 [88 L.Ed.2d 387] (1985). Appellate counsel's decision to focus on double jeopardy and not on this claim did not render his performance deficient.
Even if petitioner could show that his attorneys' performance was deficient, he was not prejudiced by any deficiency because under the doctrine of Heath v. Alabama [474 U.S. 82],106 S.Ct. 433 [88 L.Ed.2d 387] (1985), the double jeopardy holdings ofBullington and Rumsey have no application to his case. Petitioner has clearly failed to show that he was prejudiced by any deficiency on the part of his attorneys in not arguing thatBullington and Rumsey bar his death sentence.
 H. Failure to Request Evidentiary Hearing on Arbitrary, Capricious and Discriminatory Imposition of the Death Penalty
Petitioner's trial counsel did not request an evidentiary hearing to determine whether the death penalty in Alabama was applied in an arbitrary, capricious or discriminatory manner based on the race of the victim. Petitioner is white as was his wife. The race of petitioner or his victim was not a matter of any significance at trial and was never even implicitly asserted as a basis for conviction or a death sentence. Trial counsels' failure to raise racial discrimination in a case where a man paid to have his pregnant wife murdered and where both the defendant and his victim *Page 151 
were white does not render their representation ineffective.
Petitioner also failed to show that he was prejudiced by trial counsel's failure to raise this claim. Petitioner was not prejudiced because he failed to prove that his conviction and sentence were arbitrary and capricious as the result of racial discrimination. Petitioner's evidence of discrimination was insufficient because he failed to prove, or even allege, that there had been any intent to discriminate in convicting and sentencing him to death. McCleskey v. Kemp, [753 F.2d 877 (11th Cir. 1985)]. Thus, even if petitioner had presented Dr. Bray's study, he was not entitled to a hearing or relief. Petitioner has failed to show that he was prejudiced by trial counsel's not having raised this claim.
 I. Failure to Challenge Judicial Over-ride of Jury Recommendation
Petitioner's trial counsel did nto [not] challenge the constitutionality of Code of Alabama 1975, § 13A-5-47(e), which provides for sentencing by the trial judge and permits a sentence of death after a jury recommendation of life without parole. At petitioner's trial, the jury recommended a sentence of death. Petitioner's trial counsel did not consider challenging this statutory provision.
Trial counsel's performance was not deficient for failing to make a challenge to this provision of the statute. InSpaziano v. Florida [468 U.S. 447], 104 S.Ct. 3154, 3164-3165
[82 L.Ed.2d 340] (1985) [(1984)], the United States Supreme Court held that nothing in the Constitution prevents allowing a trial judge to override a jury recommendation of life. Further, the Alabama Supreme Court has held this provision to be constitutional. Ex parte Harrell, 470 So.2d 1309 (Ala.), cert.denied [474 U.S. 935], 106 S.Ct. 269 [88 L.Ed.2d 276] (1985). Trial counsels' performance was not outside the scope of professional legal assistance for failing to raise and preserve a meritless claim. Further, petitioner has failed to prove a reasonable probability that, but for the absence of this claim, the outcome of his trial would have been different.
 Claim Five: Denial of Impartial Jury
At trial, petitioner filed a motion for change of venue based on prejudicial pretrial publicity. (R. 759-762) After individual voir dire of the jury of venire, the motion for change of venue was denied. (R. 292) Petitioner did not raise the denial of his change of venue motion as an issue on direct appeal. Heath v. State, supra, 455 So.2d at 899.
As noted above concerning Claim One, coram nobis does not lie to review issues, such as this one, which were raised at trial but abandoned on direct appeal. Petitioner's failure to pursue this claim on direct appeal bars coram nobis review.
 Claim Six: Failure to Exclude Jurors who knew of Petitioner's Georgia Murder Conviction
During jury voir dire, ten venire members were excused for cause. (R. 131, 142, 150, 155, 157, 189, 224, 228, 235, 272) Eleven venire members were not challenged for cause. (R. 136, 137, 144, 170, 175, 177, 216, 22, 234, 275, 290) Petitioner's challenges to the remaining venire members were denied. Petitioner did not raise the denial of his challenges for cause as an issue of direct appeal. Petitioner injected the issue of his conviction in Georgia during voir dire of the jury. Petitioner cannot inform potential jurors of his Georgia conviction and then claim the same jurors should be excluded on that basis.
As noted above concerning Claim One, coram nobis does not lie to review issues, such as this one, which were raised at trial but abandoned on direct appeal. Petitioner's failure to pursue this claim on direct appeal bars coram nobis review.
Claim Seven: Imposition of Death Sentence, Where Petitioner had Been Sentenced in Georgia to Life Imprisonment, Violated Due Process
Petitioner did not raise this claim at trial. Petitioner pleaded guilty and was sentenced to life imprisonment in Georgia before his capital murder trial in Alabama. Since the event upon which petitioner's claim is based had occurred before his trial, he could have raised this claim at trial. *Page 152 
As noted above concerning Claim Two, coram nobis does not lie to review issues which could not have been raised at trial and then on direct appeal but were not. Petitioner's failure to preserve this claim at trial bars coram nobis review. Since petitioner's trial in Alabama does not put him in double jeopardy, Alabama is not restricted in the sentencing phase to the sentence imposed by Georgia. Alabama is free to have its entire range of permissible sentences considered by the sentencing jury and sentencing judge.
Claim Eight: Discriminatory Application of the Death Penalty to Persons Convicted of Killing White Victims
Petitioner did not raise this claim at trial. Petitioner, who is white, knew the race of his victim, who was white, before his trial and could have raised this claim at trial.
As noted above concerning Claim Two, coram nobis does not lie to review issues which could have been raised at trial and then on direct appeal but were not. Petitioner's failure to raise this claim bars coram nobis review.
There is nothing in the evidence presented by petitioner to show that the death penalty was discriminatorily applied to him.
Based upon the foregoing, the petition for writ of error coram nobis filed by Larry Heath is ORDERED denied.
DONE this the 3rd day of August, 1987.
/s/ Wayne T. Johnson CIRCUIT JUDGE