The STATE of Ohio, Appellee,

v.

McKINNEY, Appellant.

[Cite as *State v. McKinney* (1992), 80 Ohio App.3d 470.]

Court of Appeals of Ohio,
Miami County.

No. 91–CA–18.

Decided June 3, 1992.

*Jeffrey M. Welbaum,* Prosecuting Attorney, and *Jane T. Skogstrom,* Assistant Prosecuting Attorney, for appellee.

*Jack L. Carter,* for appellant.

---

BROGAN, Judge.

The appellant, Scott A. McKinney, appeals from his conviction of murder in the Miami County Court of Common Pleas.

This matter began when the body of David Fox was found near a railroad track in Indiana. The evidence showed that the crime had been committed by Scott McKinney. McKinney was first convicted in Indiana, then was retried in Miami County, Ohio, after the Indiana conviction was reversed and the cause remanded due to an error in the jury instructions.

McKinney asserts two assignments of error: (1) that he was wrongfully retried and convicted in Ohio after having been previously tried and convicted for the same offense in Indiana in violation of the double jeopardy provisions of both the United States and Ohio Constitutions, and (2) that he was denied the effective assistance of counsel as guaranteed to him by both the United States and Ohio Constitutions.

The facts of the case are as follows. In the fall of 1987, McKinney drove to Laura, Ohio, to visit David Fox. A few days later, McKinney arrived at his brother's home in South Bend, Indiana. McKinney was driving a pickup truck in which, as he told his brother, he had hidden the body of a man he had killed. The body, later identified as David Fox, was found in Gary, Indiana on September 26, 1987. The evidence showed that Fox had been killed in Ohio and his body dumped in Indiana.

On June 25, 1988, McKinney was tried and convicted of murder in St. Joseph County, Indiana, and sentenced to fifty years in prison. On appeal, the conviction was reversed and the cause was remanded in *McKinney v. Indiana* (Ind.App.1990), 553 N.E.2d 860, transfer denied (Aug. 27, 1990), unreported, because the jury had been given improper jurisdictional instructions. McKinney was not retried in Indiana; rather, a grand jury met and indicted McKinney for Fox's murder in Miami County, Ohio. Due to McKinney's indigence, public defender Mike Cargill was appointed to represent him. Included among the pretrial motions filed was a motion to dismiss the indictment due to a violation of the Double Jeopardy Clause of the United States and Ohio Constitutions. This motion was denied.

On March 14, McKinney was convicted of murder in Miami County and sentenced to a minimum term of fifteen years to life with an additional three-year term for the use of a firearm.

■ In his first assignment of error, McKinney contends that he was wrongfully retried and convicted in Ohio after having been previously tried and convicted for the same offense in Indiana, in violation of the double jeopardy provisions of both the United States and Ohio Constitutions.

Specifically, McKinney contends that the Ohio prosecution should have been barred because he was convicted in Indiana or, alternatively, because his jeopardy in Indiana was continuing from the time of his indictment in Indiana through the period of appeal to the time of his indictment in Ohio.

The Fifth Amendment to the United States Constitution states in pertinent part that " * * * nor shall any person be subject for the same offence to be twice put in jeopardy * * *." This clause was made applicable to the states through the Fourteenth Amendment in *Benton v. Maryland* (1969), 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707. Additionally, Section 10, Article I of the Ohio Constitution states that "[n]o person shall be twice put in jeopardy for the same offense."

■ The doctrine of dual sovereignty provides that a defendant may be subjected to successive trials at both the state and federal levels for the same act or offense. *Moore v. Illinois* (1852), 55 U.S. 13, 14 L.Ed. 306. The doctrine developed in order to avoid having state prosecutions hinder federal law enforcement by barring federal prosecutions based on the same acts. *United States v. Lanza* (1922), 260 U.S. 377, 382, 43 S.Ct. 141, 142–143, 67 L.Ed. 314, 317.

The United States Supreme Court recently considered a case with facts virtually identical to the instant case. In *Heath v. Alabama* (1985), 474 U.S. 82, 106 S.Ct. 433, 88 L.Ed.2d 387, Larry Heath hired two men to kill his wife, Rebecca Heath. Rebecca was kidnapped and killed in Alabama; her body was dumped in Georgia, where it was later found. Heath pleaded guilty to murder in Georgia in exchange for a sentence of life imprisonment. Subsequently, Heath was tried for murder in Alabama; the court did not find his claim of double jeopardy to have merit and convicted him of murder. The appellate court affirmed the conviction, as did the Alabama Supreme Court, which noted that double jeopardy was not applicable because " '[p]rosecutions under the laws of separate sovereigns do not improperly subject an accused twice to prosecutions for the same offense.' " *Id.* at 86, 106 S.Ct. at 436, 88 L.Ed.2d at 392–393, quoting *Ex parte Heath* (Ala.1984), 455 So.2d 905, 906. The court further stated that although the United States Supreme Court had not

previously considered the applicability of the dual sovereignty doctrine to successive prosecutions by different states, it reasoned that " '[i]f, for double jeopardy purposes, Alabama is considered to be a sovereign entity vis-à-vis the federal government then surely it is a sovereign entity vis-à-vis the State of Georgia.' " *Id.*

On appeal, the Supreme Court affirmed Heath's conviction, and stated that historical application of the dual sovereignty doctrine compelled the conclusion that successive prosecutions by two states for the same conduct was not barred by the Double Jeopardy Clause.

"The dual sovereignty doctrine is founded on the common-law conception of crime as an offense against the sovereignty of the government. When a defendant in a single act violates the 'peace and dignity' of two sovereigns by breaking the laws of each, he has committed two distinct 'offences [*sic* ].' " *Id.* at 88, 106 S.Ct. at 437, 88 L.Ed.2d at 394, citing *United States v. Lanza, supra,* 260 U.S. at 382, 43 S.Ct. at 142–143, 67 L.Ed. at 317.

Therefore, when the same act violates the laws of two sovereigns, the offender has not been punished twice for the same offense, because the one act constituted two offenses, for each of which he can be punished. *Id.*

The threshold determination in applying the dual sovereignty doctrine in this manner is whether the two entities seeking to prosecute a defendant can be deemed separate sovereigns; each entity must draw its authority to punish from different sources of power. *Id.* The theory that the states are separate sovereigns with respect to the federal government has been previously stated by the Supreme Court; each state derives its power to prosecute from its own " 'inherent sovereignty,' not from the Federal Government." *Id.* at 89, 106 S.Ct. at 438–439, 88 L.Ed.2d at 394–395; see, also, *United States v. Wheeler* (1978), 435 U.S. 313, 322, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303, 312.

Thus, each state has the power to independently determine what shall be an offense against its authority and to punish such offenses. In doing so, each is exercising its own sovereignty, not that of the other. *Id.,* at 474 U.S. at 89, 106 S.Ct. at 438, 88 L.Ed.2d at 394–395. Because each state is endowed with the power to create and enforce its own criminal code, to deny a state the power to enforce such laws because another state initiated an action first would be a shocking and untoward deprivation of the historic right and obligation of the states to maintain peace and order within their boundaries. *Id.*

■ The present case is distinguishable from *Heath* only in that the states involved are different; in *Heath* it was Georgia and Alabama, here it is Ohio and Indiana. All other. pertinent facts are on point. Therefore, *Heath* is

compelling precedent in our case and the doctrine of *stare decisis* applies. This doctrine provides that a court's decision made after argument on a question of law necessary to the determination of a case is binding precedent in lower courts where the same issue is in controversy. *State v. Mellenberger* (1939), 163 Ore. 233, 259–263, 95 P.2d 709, 719. However, "the degree of authority belonging to such a precedent depends, of necessity, on its agreement with the spirit of the times or the judgment of subsequent tribunals upon its correctness as a statement of the existing or actual law * * *." *Id.*

■ We find that the doctrine of *stare decisis* requires that we follow the Supreme Court's holding in *Heath* that successive prosecutions by two states for the same conduct is not barred by the Double Jeopardy Clause. Additionally, this holding resolves McKinney's alternative argument of continuing jeopardy, for, even should Indiana choose to retry the case, McKinney would not be subject to double jeopardy. See *United States v. Scott* (1978), 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65, rehearing denied (1979), 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 486. Accordingly, the appellant's first assignment of error is overruled.

In his second assignment of error, McKinney asserts that he was denied the effective assistance of counsel as guaranteed to him by both the United States and Ohio Constitutions.

McKinney advances two separate arguments under this assignment of error. First, he asserts that his attorney, Mr. Cargill, should have argued the issue of double jeopardy more vigorously, and second, he argues that Cargill should have removed the juror employed as a deputy clerk in the Miami County Municipal Court.

■ In order to successfully assert ineffective assistance of counsel under the Sixth Amendment, the dual prongs of the test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, must be satisfied. A defendant must show not only that the attorney made errors so serious that he was not functioning as "counsel" as guaranteed by the Sixth Amendment, but also that the deficient performance was so serious as to deprive him of a fair and reliable trial. *Id.* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

■ The Ohio Supreme Court set forth a similar two-part test:

" 'First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness.' " *State v.*

*Bradley* (1989), 42 Ohio St.3d 136, 141–142, 538 N.E.2d 373, 379 (quoting *State v. Lytle* [1976], 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 497, 358 N.E.2d 623, 627), certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768.

Because there are countless ways to provide effective assistance in any given case, the scrutiny of counsel's performance must be highly deferential, and there will be a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland, supra;* accord *State v. Bradley, supra.* In sum, it must be proven that counsel's performance fell below an objective standard of reasonable representation, and that prejudice arose from his performance. *Id.*

■ The record shows that Cargill refiled McKinney's motion asserting double jeopardy on February 14, 1991, specifically because the original *pro se* filing was not in compliance with the Ohio Revised Code. Further, Cargill specifically told the court that he had informed McKinney that his research into the issue of double jeopardy with respect to the dual sovereignty doctrine had been fruitless and that he was unable to find the necessary authority to contest the applicability of *Heath*, wherein the Supreme Court decided this issue in a manner unfavorable to McKinney. No such authority has been presented by the appellant. Cargill further added that McKinney's concern about being tried twice was a jurisdictional issue which was more appropriate to raise at trial.

We do not find that Cargill made errors so serious that he was not functioning as "counsel" as guaranteed by the Sixth Amendment. Furthermore, based on our disposition of the applicability of the dual sovereignty doctrine in McKinney's first assignment of error, Cargill's assessment of the applicability of *Heath, supra*, to the instant case was correct. This portion of McKinney's second assignment of error is without merit.

■ McKinney's second argument asserts that Cargill rendered ineffective assistance of counsel by allowing a juror employed as a deputy clerk in the Miami County Municipal Court to serve on the panel. McKinney does not assert that the juror had prior knowledge of the case, only that her connection to the local judicial system resulted in a presumption of prejudice and bias which rendered her an unfit juror.

Neither the Ohio Rules of Civil Procedure nor the Ohio Revised Code contains a provision that a court employee is presumed to be biased as a juror. See R.C. 2313.42; Crim.R. 24. Furthermore, it has been previously held that a state employee is not automatically disqualified from serving as a juror in a criminal case where the state is a party and where actual bias is lacking. *State v. Sims* (1969), 20 Ohio App.2d 329, 49 O.O.2d 454, 253 N.E.2d 822.

McKinney has failed to provide this court with a transcript of the voir dire process, nor has he provided a basis for the argument that prejudice is to be presumed from one's employment as a deputy clerk. Because there is no evidence that the court employee harbored a particular bias or prejudice with respect to this case, we do not find that Cargill failed to provide effective assistance of counsel by allowing her to remain on the jury panel. See, also, *State v. Sinks* (June 15, 1990), Montgomery App. No. 11428, unreported, 1990 WL 80582 (tactical decisions do not rise to the level of ineffective assistance of counsel).

For the aforementioned reasons, McKinney's second assignment of error is overruled. The judgment of the Miami County Court of Common Pleas finding McKinney guilty of murder is hereby affirmed.

*Judgment affirmed.*

FAIN, P.J., and GRADY, J., concur.